UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                      Plaintiff,

v.                                                     Case # 13-CR-191-FPG

                                                        DECISION AND ORDER

ALLEN M. YOUNG,

                      Defendant.

## BACKGROUND

On March 18, 2016, the defendant Allen Young ("Defendant") pled guilty to Count Two of a four count indictment that charged him with Possession with Intent to Distribute Methylone.

On August 18, 2016, a sentencing hearing was held in the above-captioned matter.

Defendant challenged a two level increase pursuant to United States Sentencing Guidelines Section 2D1(1)(b)(1) for Possession of a Firearm. He alleges that the weapons found at 11396 Martin Road, Shelby, New York, after execution of a search warrant, were his stepfather's property and not his.

Additionally, Defendant challenges the application of United States Sentencing Guideline Section 3A1.2(c)(1), which would result in a six level increase for acting in a manner creating a substantial risk of serious bodily injury to a law enforcement officer.

## FINDINGS OF FACT

Based upon the testimony that the Court deems credible, the following facts are determined:

Deputy Eric Harling was employed by the Orleans County Major Crime Task Force. He has 23 years of experience as a police officer.

On December 13, 2012, Deputy Harling and Investigator Giffaldi were at Champs Mini Mart at Route 63 and Route 104 to execute a search warrant for Defendant and his vehicle. The officers were in an unmarked black Trailblazer police vehicle. Investigator Giffaldi, who was driving the vehicle, drove into the parking lot facing Defendant's vehicle nose-to-nose.

The officers exited their vehicle and announced, "Police. Stop." Defendant, who was by the Champs Mini Mart, ran and jumped into his vehicle. Deputy Harling was on the driver's side of Defendant's vehicle and Investigator Giffaldi was on the passenger side.

Defendant put his car in reverse and quickly backed away. The officers, who were yelling "Police," also had badges on chains hanging around their necks. Deputy Harling had his weapon out. There was a female front seat passenger in Defendant's vehicle who was operating as a police informant. Defendant's vehicle reversed quickly, squealing his tires. As he backed up, the officers were on either side of his vehicle and the vehicle's mirrors nearly struck them. The officers jumped out of the way and the vehicle came to a stop in front of the gas pumps. Deputy Harling got in front of the car and yelled for Defendant to stop the car. Defendant then placed the car in drive and, with tires squealing, drove toward Deputy Harling. Deputy Harling was only a few feet in front of the car at the time. After he jumped out of the way, he observed the car pass over the spot where he had just been standing. Defendant's car slid sideways onto Route 104 and traveled westbound. The officers entered their police vehicle and attempted to chase Defendant. The unmarked police vehicle had red and white police lights activated on the grill. There were also strobe lights on the taillights.

This incident occurred at approximately 5:45 p.m. It was dark outside; however, there was some background lighting at Champs Mini Mart.

A statement from the police informant who was Defendant's front seat passenger was also received as evidence at the hearing.  The individual indicated that while Defendant was outside his vehicle she observed a black Trailblazer pull up in front of Defendant's vehicle with flashing red and white lights on.  She saw two men jump out, and she could see that they had badges and guns drawn.  She further stated that she heard these men yell "Police" and yell for Defendant to stop.  Instead, Defendant put the car in reverse and "floored it."

Also received as evidence at the hearing was the informant's grand jury testimony that on December 22, 2012, she witnessed Defendant bagging up Molly at 11396 Martin Road and identified a gun that she observed inside the residence that Defendant indicated was his .45.

Finally, the government presented William Cassidy's grand jury testimony.  Mr. Cassidy testified that he gave Defendant a box of .50 caliber ammunition on December 13, 2012, and that he sold an AR-15 to Defendant. Nine rounds of .50 caliber ammunition were recovered from Defendant's vehicle on December 13, 2012.

On April 5, 2013, the Major Crime Task Force executed a search warrant at 11396 Martin Road, Shelby, New York.  Seven firearms were seized from that location.

Scott John Bouter, Defendant's stepfather, testified that the six or seven rifles that the police seized from his house at 11396 Martin Road were his and not Defendant's.  He claims that a statement he provided earlier to police indicating that these guns belonged to Defendant was not true, and that he only said that because he felt threatened by the police.  At the hearing Mr. Bouter claimed that he was a gun collector. Although the Court is skeptical about the testimony provided by this witness, there was not sufficient evidence produced to find by a preponderance of the evidence that Defendant possessed these weapons at the operable time.

3

Finally, Defendant called Janet Canne as a witness.  Ms. Canne testified that she was at the Champs Mini Mart on the evening in question and that as she got out of her car she saw two men in black coats yelling, "stop, stop."  She observed a black vehicle and a gun being pointed in the other direction.  She claims that she did not see the two individuals in black jump away from Defendant's vehicle.  Ms. Canne admitted that she works with Defendant's sister who she considers a friend.  Ms. Canne testified that the two men could have been cops.  It appears to the Court that this witness was either not in a position to observe what occurred on the date in question or simply has a lack of recall. In any event, based upon those observations of this witness's testimony, coupled with the fact that the witness has a relationship with Defendant's sister, this evidence presented has little if any value to the Court's determination.

## **CONCLUSIONS OF LAW**

United States Sentencing Guidelines Section 2D1.1(b)(1) specifies that when the defendant is charged with Unlawful Manufacturing, Importing, Exporting, Trafficking, or Possession of Drugs and he possessed a weapon, including a firearm, then the offense level shall be increased by two levels.  The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The enhancement should be applied if a weapon was present.

In this case, no weapon was found on Defendant or in his vehicle.  Only months later, upon the execution of a search warrant at his residence, were firearms discovered at that location. Because there is no connection between the possession of those firearms and Defendant's drug trafficking, the Court fails to find by a preponderance of the evidence that Section 2D1.1(b)(1) should apply.  Therefore, the Court declines to apply the two level upward adjustment to the offense level.

United States Sentencing Guideline 3A1.2(c) indicates that there should be a six level increase to the offense level if the defendant acted in a manner creating a substantial risk of serious bodily injury, knowing or having reasonable cause to believe that a person was a law enforcement officer, during the course of the offense or immediate flight therefrom.

Based upon the evidence produced at the hearing, the Court finds more than sufficient evidence, clearly more than a preponderance of the evidence, that Defendant created a substantial risk of serious bodily injury to both officers who were attempting to execute a search warrant on him and his vehicle on December 13, 2012.  Defendant created a substantial risk of serious injury to the officers when he reversed his vehicle at a high speed while the officers were beside it and, most importantly, when he drove his vehicle directly at one of the officers. Defendant's argument that he did not know that the individuals were police officers is illogical and not credible.  They wore badges around their necks as they approached him and yelled in loud voices, "Police. Stop." on several occasions.  The evidence is overwhelming regarding Defendant's actions in creating a substantial risk of serious bodily injury to these officers and therefore the six level increase pursuant to Section 3A1.2(c) shall be applied.

IT IS SO ORDERED.

Dated: October 4, 2016
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court