```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| ALLEN M. YOUNG,<br><br>    Movant,<br><br> -vs-<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | **DECISION AND ORDER**<br>**Civil Case**<br>**No. 1:19-cv-01311-MAT**<br><br><br>**Criminal Case**<br>**No. 1:13-cr-00191-FPG-HKS** |

## I. Introduction

Proceeding pro se, Allen M. Young ("Young" or "Movant") has filed a Motion to Vacate the Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the reasons discussed below, the Court denies the request for a writ of habeas corpus, dismisses the Section 2255 Motion, and declines to grant a certificate of appealability.

## II. Factual Background and Procedural History

### A. The Indictment and Information

Young was charged in an Indictment returned August 29, 2013, with violations of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute, a mixture and substance containing 3,4-methylenedioxy-N-methylcathinone (methylone), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1)), 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute a quantity of 3,4-methylenedioxy-N-methylcathinone (methylone) (Count 2) and marijuana (Count 3), Schedule I controlled substances), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (possession of firearms and

ammunition by a felon (Count 4)). On October 22, 2015, the Government filed an Information pursuant to 21 U.S.C. § 851, giving notice of its intent to rely on Young's 2009 Orleans County Court conviction for a violation of New York Penal Law § 220.06(a) (Criminal Possession of a Controlled Substance in the Fifth Degree) as the basis for imposing a longer sentence should Young be convicted of a violation of Title 21.

**B. Plea Proceedings**

On March 18, 2016, Young, represented by counsel, appeared before the Court (Geraci, D.J.), and pleaded guilty to Count 2 of the Indictment (violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)) in exchange for the Government's dismissal of the remaining counts of the Indictment. Pursuant to the terms of the Plea Agreement, the parties agreed that base offense level 30 applied due to Young's relevant conduct involving 4 kilograms but less than 12 kilograms of a mixture or substance containing methylone, an amount which converted to at least 1,000 kilograms but less than 3,000 kilograms of marijuana. The parties agreed to the application of a 2-level upward adjustment under United States Sentencing Guidelines ("USSG" or "Guidelines") § 3C1.2 (reckless endangerment during flight). However, the parties disputed the application of one Chapter 2 adjustment (a 2-level increase pursuant to USSG § 2D1.1(b)(1) (possession of a firearm)) and one other Chapter 3 adjustment (6-level upward adjustment pursuant to USSG § 3A1.2(c)(1) (official victim/assault of a law enforcement officer during offense)). After

agreeing to a recommendation that the district court apply the two level downward adjust of USSG § 3E1.1(a) (acceptance of responsibility), the parties further agreed that if the Government's calculations applied, the sentencing range would be a term of imprisonment of 324 to 360 months, based on a total offense level 38 and agreed-upon Criminal History Category ("CHC") of IV. The parties also agreed that if, on the other hand, Young's calculations applied, the sentencing range would be a term of imprisonment of 135 to 168 months, based on a total offense level 30 and CHC of IV.

    **C.    The Sentencing Evidentiary Hearing**

After receiving the parties' submissions in regard to sentencing, Judge Geraci scheduled an evidentiary hearing to resolve the parties' dispute as to the two Guidelines enhancements. At the hearing held on August 18, 2016 (ECF #88, Transcript), three witnesses testified. Eric Harling ("Harling"), an Orleans County Sheriff's Deputy, and Scott Bouter ("Bouter"), Young's step-father, testified for the Government. Janet Canne ("Canne") testified on Young's behalf.

On December 12, 2012, the Orleans County Major Felony Crime Task Force ("MFCTF") obtained a search warrant for Young's person, residence, and vehicle (a 2005 Acura). The warrant authorized a search for, among other items, various narcotics and drug paraphernalia. On December 13, 2012, at about 5:40 p.m., Young, stopped at the Champs Mini Mart in Ridgeway, New York. He had one

3

passenger in his car, a woman who was operating as a confidential police informant ("CI").

Harling testified that, upon spotting Young, he and his partner approached in an unmarked black Trailblazer SUV with the front grill lights flashing. Wearing police badges, the officers pulled up and got out their vehicle, announcing, "Police. Stop." H.10-11.[1] Young did not comply. He instead ran back to his vehicle, put it in reverse, and backed up quickly. According to Harling, the officers had to back up to avoid being hit by Young's vehicle. After driving backwards about 30 to 40 yards, Young stopped the car and "was hesitant for a minute." H.12. One of the officers moved in front of Young's vehicle and again ordered him to stop. Young put the car in drive and drove towards the officers with tires squealing, forcing them to jump out of the way. Young then drove the car directly over the spot where one of the officers had just been standing. The officers attempted to pursue Young down Ridge Road to Marshall Road but were unable to catch him.

After Young turned onto Marshall Road, he turned off his headlights. Moments later, while heading straight for a mailbox, Young jerked the steering wheel and caused the car to turn on its side and slide. When the car came to a stop, Young fled. The CI stayed with the car and was subsequently treated for a sprained neck and back.

---

[1] Numerals preceded by "H." refer to pages in the transcript of the August 18, 2016 evidentiary hearing (ECF #88).

The defense called Canne, who testified that she had gone to the mini-mart around 5:45 p.m. to pick up a gallon of milk. As she was getting out of her car, she saw two men in black coats about 30 feet away saying, "Stop, stop." H.55. She turned and saw a black vehicle and two men, one of whom was pointing a gun. She did not hear them yell, "Police" or "Freeze." H.55. They were not wearing badges, and there was no law enforcement insignia on their clothing. Canne saw Young, in a small grey car drive out of the parking lot after he saw the men wearing black. At no time did she see the two individuals in black coats jump away from that car. Canne testified that the men were never in danger of being struck by the grey car because Young "was on the opposite side of them, way on the other side by the pumps." H.56. On cross-examination, Canne admitted that the men wearing black "could have been cops." H.65. In addition, she acknowledged that she had been friends with Young's sister, Rachel Gardner, for a "considerable period of time[.]" H.65.

Judge Geraci issued a Decision and Order making findings of fact and conclusions of law, holding that he would apply USSG § 3A1.2(c)(1) but would not apply USSG § 2D1.1(b)(1). See United States v. Young, No. 13-CR-191-FPG, 2016 WL 5807266, at *2 (W.D.N.Y. Oct. 5, 2016), aff'd, 910 F.3d 665 (2d Cir. 2018).

"Based upon the evidence produced at the hearing," Judge Geraci found "more than sufficient," "credible" evidence, "clearly more than a preponderance of the evidence, that [Young]

5

created a substantial risk of serious bodily injury to both officers who were attempting to execute a search warrant on him and his vehicle on December 13, 2012. [Young] created a substantial risk of serious injury to the officers when he reversed his vehicle at a high speed while the officers were beside it and, most importantly, when he drove his vehicle directly at one of the officers." Id. at *3. Judge Geraci rejected as "not credible" Young's contention that he did not know the individuals involved were police officers given that "the two officers were wearing badges around their neck as they approached him and yelled multiple times in loud voices[,] [']please stop[']." Id. The officers' testimony was found credible, along with the CI's statement which corroborated the officers' version of events. With regard to Canne, Judge Geraci found that

> [i]t appears to the Court that this witness was either not in a position to observe what occurred on the date in question or simply has a lack of recall. In any event, based upon those observations of this witness's testimony, coupled with the fact that the witness has a relationship with [Young]'s sister, this evidence presented has little if any value to the Court's determination.

Young, 2016 WL 5807266, at *2. In sum, Judge Geraci concluded, "[t]he evidence is overwhelming regarding [Young's] actions in creating a substantial risk of serious bodily injury to these officers and therefore the six level increase pursuant to Section 3A1.2(c) shall be applied." Id. at *3.

**C. Sentencing**

At the sentencing held on October 4, 2016, Judge Geraci reviewed the testimony and evidence introduced during the sentencing evidentiary hearing and pronounced its decision on the objections to the application of USSG § 2D1.1(b)(1), finding that the two-level increase did not apply. However, as to § 3A1.2(c), Judge Geraci noted that "the evidence is really quite overwhelming regarding the defendant's action in creating a substantial risk of serious bodily injury to these officers and, therefore, the six-level increase . . . shall be applied." After hearing from counsel and Young himself, the Court conducted its Guidelines calculations, finding that with a base offense level 30, adding the six-levels for creating a substantial risk of injury, plus two for reckless endangerment, minus two levels for acceptance of responsibility, resulted in a total offense level of 36. With a CHC of IV, the advisory Guidelines range was 262 and 327 months.

After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), Judge Geraci exercised his discretion to impose a below-Guidelines sentence of 200 months in prison, to be followed by 6 years of supervised release. Judgment was entered on October 5, 2016.

**D. The Direct Appeal**

Young pursued a direct appeal. On December 12, 2018, the Second Circuit issued a Decision and Order holding that the authorization granted to the United States Probation Office to

supervise and oversee the substance abuse treatment orally mandated by the district court as a condition of supervised release had to be construed to exclude imposition of inpatient treatment; Judge Geraci did not impermissibly delegate judicial authority to a probation officer in the mental health treatment required as condition of supervised release; in calculating the advisory Sentencing Guidelines range for Young's narcotics offense, Judge Geraci properly imposed the six-level "official victim" enhancement in the base offense level; and Judge Geraci did not err, much less plainly err, in declining to grant a downward departure to account for the time that Young spent in presentence state custody before his federal conviction. See United States v. Young, 910 F.3d 665, 670-74 (2d Cir. 2018).

### E. The § 2255 Motion

On August 19, 2019, Young filed a Motion to Appoint Counsel (ECF #113), and on September 23, 2019, he filed the instant § 2255 Motion (ECF #114). Young asserting several claims of ineffective assistance of trial counsel due to (1) the failure to move to suppress evidence; (2) the failure to challenge the § 851 enhancement; (3) the failure to correct the Court's characterization of his prior conviction; and (4) the failure to adequately contest the sentencing enhancement. The Government filed a Response (ECF #122) to the § 2255 Motion. Young filed a Response (ECF #123) to the Government's Response on January 17,

2010. On January 31, 2010, the § 2255 Motion was transferred to the undersigned (ECF #124).

**III. Standard of Review Under § 2255**

Section 2255 provides, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court may dismiss a Section 2255 motion without a hearing if the motion and the record "conclusively show[,]" id., that the movant is not entitled to relief. See, e.g., Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court was not required to hold full testimonial hearing before deciding federal prisoner's motion to vacate, set aside or correct sentence based on claim of ineffective assistance of counsel alleging that counsel prevented him from exercising his right to testify on his own behalf, where prisoner made only general allegation, and record was supplemented by detailed affidavit from trial counsel credibly describing circumstances concerning prisoner's failure to testify).

**IV. Merits of the § 2255 Motion**

    **A. Standard of Review for Ineffective Assistance of Counsel Claims**

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty . . . and sentencing[.]" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)(citing Hill v. Lockhart, 474 U.S. 52, 58 (1985); Missouri v. Frye, ___ U.S. ____, 132 S.Ct. 1399, 1405 (2012); Glover v. United States, 531 U.S. 198, 202-04 (2001); Mempa v. Rhay, 389 U.S. 128, 134 (1967)).

    To succeed on a Sixth Amendment ineffective assistance claim, the defendant must fulfill a two-part test. First, the defendant "must show that counsel's performance was deficient," Strickland v. Washington, 466 U.S. at 687 (1984), such that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690. In addition, the defendant must show "that the deficient performance prejudiced the defense," id. at 687. Prejudice is generally defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

    In the particular context of guilty pleas, the prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Gonzalez, 722 F.3d at 130 (citing Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1387 (2012); Glover, 531 U.S. at 203 ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.")). An ineffective assistance claim must be rejected if the defendant fails to meet either prong of the Strickland test. Strickland, 466 U.S. at 687, 697.

### B. Trial Counsel's Alleged Errors

#### 1. Pre-Plea Errors

Young points to two alleged errors that occurred prior to the entry of his guilty plea. In Ground One, he asserts that trial counsel was ineffective by failing to file motions to suppress on the grounds that certain evidence had been subject to tampering or involved a broken chain of custody. See § 2255 Motion at 15-17. In Ground Two, Young faults trial counsel for failing to challenge the § 851 Information. See id. at 17-18.

As the Government argues, both of these claims are foreclosed under the doctrine of Tollett v. Henderson, 411 U.S. 258, 267 (1973). In Tollett, the Supreme Court held that "[a] defendant who

11

pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (quoting Tollett, 411 U.S. at 267)); see also, e.g., United States v. Parisi, 529 F.3d 134, 138 (2d Cir. 2008).

Young's claim concerning counsel's errors in connection with the litigation of suppression issues does not relate to the advice he received regarding the decision to plead guilty. See, e.g., United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997). In Torres, the defendant claim that he received ineffective counsel both because "he was coerced by his attorney into pleading guilty," and because the same attorney "failed to call witnesses at a pretrial suppression hearing." Torres, 129 F.3d at 715. After rejecting Torres' first claim on the basis that defendant's plea was completely voluntary and knowing, the Second Circuit held that the second claim regarding counsel's performance at the suppression hearing was barred under Tollett v. Henderson, supra, because the substance of the claim did not relate to the voluntariness of the guilty plea. Torres, 129 F.3d at 715 (citing Coffin, 76 F.3d at 497; Tollett, 411 U.S. at 267).

Likewise, Young's assertion that trial counsel disobeyed his direction to challenge the § 851 Information does not take this

12

claim outside of Tollett's ambit. Again, as with the suppression issues, trial counsel's decision with regard to the § 851 Information does not relate to Young's decision to plead guilty. In any event, this claim is without merit. The Government properly filed an information pursuant to 21 U.S.C. § 851(a)(1) setting forth in writing the prior felony drug conviction on which it intended to rely. Throughout the plea and sentencing proceedings, Young did not dispute that the § 851 enhancement was appropriate. Indeed, the defense did not object to the Pre-Sentence Investigation Report which set forth the statutory provision as providing for 30 years' maximum penalty pursuant to 21 U.S.C. §§ 841 (b)(1)(C) and 851. "[C]ounsel cannot be faulted for failing to make a meritless objection or argument." Cimino v. Conway, No. 08-CV-6318 MAT, 2011 WL 815677, at *13 (W.D.N.Y. Mar. 2, 2011) (citing United States v. Arena, 180 F.3d 380, 396 (2d Cir.1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), overruled in part on other grounds, Scheidler v. Nat'l Org. For Women, Inc., 527 U.S. 403-04 n.8 (2003); Carvajal v. Artus, No. 07CIV10634CMAJP, 2008 WL 4555531, at *35 & n.32 (S.D.N.Y. Oct. 10, 2008) (collecting cases that hold counsel cannot be ineffective for failing to make a meritless objection or argument), report and recommendation adopted, No. 07CIV.10634(CM)(AJP), 2009 WL 62177 (S.D.N.Y. Jan. 9, 2009), aff'd, 633 F.3d 95 (2d Cir. 2011)); see also United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless

13

argument does not rise to the level of ineffective assistance[.]") (citing United States v. Javino, 960 F.2d 1137, 1145 (2d Cir.), cert. denied, 506 U.S. 979 (1992).

### 2. Sentencing Errors

Young also contends that trial counsel was ineffective at the sentencing proceeding for failing to correct the record when Judge Geraci purportedly mischaracterized his prior drug convictions as involving intent to sell and failing to present evidence and "correctly argue" against the application of the six-level increase pursuant to USSG § 3A1.2(c). See § 2255 Motion at 18-20. The Government argues that these claims are barred from collateral review they were never raised on direct appeal. Because it is easier to dispose of these claims on the merits rather than address the procedural bar, that is the course the Court will follow here.

Young's claim that trial counsel erroneously failed to correct the Court's characterization of his criminal history rests on his assertion, unsupported by any citation to the record, that Judge Geraci announced, "Look at all these possessions with intent to sell you have had. You have been selling drugs your whole life and getting away with it." A review of the transcript reveals that Judge Geraci made no such comment, nor any comment that could reasonably construed in the manner urged by Young.

Judge Geraci noted that in fashioning a "sentence that's sufficient but not greater than necessary to accomplish the purpose," he had to consider, in addition to Young's having

14

threatened witnesses while in jail and the "magnitude of the distribution of the drugs in [his] community," Young's "long criminal history, [his] drug use, sales, and the fact that [he] really [has]n't been engaged in any gainful employment through most of [his] life." Judge Geraci also cited Young's "positive factors," noting that he was "a young guy" with an associate's degree and "a family supporting [him]," so he had "the potential in the future to go in a different direction if [he] elect[s] to do that." Judge Geraci commented that he "can't ignore obviously" what Young had done to date but also was "hopeful" that when Young "do[es] get out of jail [he is] going to use [his] energies in a proper manner so [he] can be a constructive member of any community." While Judge Geraci did reference Young's criminal history and activities, Young cannot suggest that these are not proper factors for the sentencing court consider. Moreover, Judge Geraci focused on the positive equities presented by Young's case. In short, there is no basis on which to find that the sentence was based on any misstatements or mischaracterizations of Young's criminal history.

With regard to trial counsel's allegedly deficient handling of the six-level increase pursuant to USSG § 3A1.2(c), this claim also lacks merit. USSG § 3A1.2(c) requires a six-level sentencing enhancement "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable–(1) knowing or having reasonable cause to believe that a person was a law enforcement

15

officer, assaulted such officer during the course of the offense or immediate flight therefrom. . . ." U.S.S.G. § 3A1.2(c)(1). Thus, the Government was required to show that Young knew or had reason to believe that the individuals he confronted at the parking lot of the mini-mart were police officers. The standard of proof is a preponderance of the evidence. United States v. Yanotti, 541 F.3d 112, 129 (2d Cir. 2008).

Young argues that trial counsel should have secured the admission of a 911 call that purportedly was made during the execution of the search warrant. Young points to "the statement given by the informant who was in the car with petitioner that when she asks petitioner, 'What's going on?' He sais he thinks he is being robbed." Reply (ECF #123), p. 3 of 23. Young asserts that at the "same time" this was occurring, "the clerk in the store makes a call to 911 which states, 'There is a crazy guy with a gun, trying to rob my customer in the parking lot.'" Id. (Presumably, the "crazy guy with a gun" is Harling, one of the task force officers attempting to execute the search warrant.) Young also cites Canne's hearing testimony that there were no flashing lights on the black Trailblazer, that the police were not wearing badges and did not announce themselves, and that the officers were not in front of Young's vehicle as he fled the parking lot. According to Young, the cumulative weight of the alleged 911 call, in conjunction with Canne's testimony and the CI's statement, would

16

have compelled a conclusion that the sentencing enhancement under USSG § 3A1.2(c)[2] was not supported by preponderating evidence.

As an initial matter, apart from Young's unsubstantiated assertions, there is no proof that such a 911 call actually was made. Even assuming for the sake of argument that such a call was made, the only information provided by Young regarding its substance is the mini-mart clerk's opinion, made from a vantage point inside the store (not in the parking lot) that a customer was being robbed. The 911 call, as summarized by Young, provides no information at all about the events relevant to determining whether Young, in a manner creating a substantial risk of serious bodily to that person, assaulted a person whom he knew or had reasonable cause to believe was a law enforcement officer, while fleeing, see USSG § 3A1.2(c).

Young has failed to demonstrate a reasonable probability that, based on the 911 call, Judge Geraci would have reconsidered and altered his decision following the evidentiary hearing. The 911 call, even assuming it existed, simply lacks sufficient probative value to undermine what Judge Geraci found to be "overwhelming evidence" supporting the imposition of the USSG § 3A1.2(c) enhancement. Because there no "reasonable probability that, but for

---

[2] USSG § 3A1.2(c) "applies in circumstances tantamount to aggravated assault (i) against a law enforcement officer, committed in the course of, or in immediate flight following, another offense. . . . While subsection (c) may apply in connection with a variety of offenses that are not by nature targeted against official victims, its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a 'substantial risk of bodily injury.'" Commentary, U.S.S.G. § 3A1.2.

counsel's substandard performance, he would have received a less severe sentence[,]" <u>Gonzalez v. United States</u>, 722 F.3d 118, 130 (2d Cir. 2013) (citations omitted), Young cannot prevail on his ineffective assistance claim.

## V. Conclusion

For the foregoing reasons, the § 2255 Motion is denied. No certificate of appealability shall issue because Young has failed to make a substantial showing of the denial of a constitutional right. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   February 19, 2020
         Rochester, New York.